10-3891-cr
United States v. Botti

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

Argued:  May 2, 2012      Decided:  March 28, 2013

Docket No. 10-3891-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

JAMES BOTTI

*Defendant-Appellant*.

_____

Before: SACK and RAGGI, Circuit Judges, and KOELTL, District Judge.[*]

Defendant James Botti was convicted of honest services mail fraud after a jury trial in the District of Connecticut (Charles S. Haight, Jr., Judge).  See 18 U.S.C. §§ 1341 and 1346.  In this appeal from the judgment entered on September 20, 2010, Botti argues that the District Court committed reversible error when it used a jury instruction on honest services mail fraud that allowed the jury to find Botti guilty

_____

*  The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

-1-

of that crime without finding a bribery or kickback scheme, in contravention of the Supreme Court's decision in Skilling v. United States, 130 S. Ct. 2896 (2010). While the jury instruction was error, it does not merit reversal because bribery was the only theory of honest services mail fraud available to the jury based on the arguments and evidence at trial. Therefore, we affirm the judgment of the District Court.

Affirmed.

_____

GEORGE W. GANIM, JR., The Ganim Law Firm, P.C., for Defendant-Appellant James Botti.

RICHARD J. SCHECHTER AND RAHUL KALE, Assistant United States Attorneys, (Sandra S. Glover on the brief) for Michael J. Gustafson, Acting United States Attorney for the District of Connecticut, for Appellee United States of America.

_____

John G. Koeltl, District Judge:

Defendant James Botti was convicted of honest services mail fraud after a jury trial in the District of Connecticut (Charles S. Haight, Jr., Judge). See 18 U.S.C. §§ 1341 and 1346. In this appeal from the judgment entered on September 20, 2010, Botti argues that the District Court committed reversible error when it used a jury instruction on honest services mail fraud that allowed the jury to find Botti guilty of that crime without finding a bribery or kickback scheme, in

contravention of the Supreme Court's decision in <u>Skilling v. United States</u>, 130 S. Ct. 2896 (2010). While the jury instruction was error, it does not merit reversal because bribery was the only theory of honest services mail fraud available to the jury based on the arguments and evidence at trial.

Therefore, we AFFIRM the judgment of the District Court.

**BACKGROUND**

On November 6, 2008, a grand jury in the District of Connecticut returned a seven-count indictment against Botti charging (i) one count of conspiracy in violation of 18 U.S.C. § 371 to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 1346; (ii) one count of bribery of a public official in violation of 18 U.S.C. § 666(a)(2); (iii) one count of scheming to obtain money and property and to defraud the citizens of Shelton, Connecticut of the right to honest services by mail fraud in violation of 18 U.S.C. §§ 1341 and 1346; (iv) one count of conspiracy in violation of 18 U.S.C. § 371 to structure transactions with domestic financial institutions contrary to 31 U.S.C. §§ 5324(a)(3) and 5324(d); (v) one substantive count of such structuring in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d); and (vi) and (vii) two counts of making false statements to the Internal Revenue Service in violation of 18 U.S.C. § 1001(a)(2). The

-3-

indictment also included a forfeiture allegation in connection with the structuring counts.

Prior to trial, the District Court granted the defendant's motion to sever the indictment and ordered that the conspiracy to commit mail fraud, bribery, and mail fraud counts—Counts One, Two, and Three—be tried separately from the conspiracy to structure, structuring, and false statement counts—Counts Four through Seven. Separate redacted indictments were prepared for each trial.

On November 10, 2009, a jury found Botti guilty of conspiracy to structure and structuring. The jury found him not guilty of the two false statement counts.

On April 1, 2010, a separate jury found Botti guilty of honest services mail fraud, as charged in Count Three of the original and redacted indictments. On the verdict sheet, the jury answered "yes" to the statement: "James Botti engaged in a scheme or artifice to deprive the citizens of Shelton of the intangible right of honest services of their public official or officials, by utilizing or causing the United States mails to be used for the purpose of executing that scheme or artifice." The jury was unable to agree on whether an object of the mail fraud scheme was also "to obtain money or property by means of materially false or fraudulent pretenses, representations or promises . . . ." The jury was also unable

-4-

to reach a verdict on the conspiracy count and the bribery count, and the District Court declared a mistrial on those counts and on the money and property prong of the mail fraud count.

On September 17, 2012, Botti was sentenced principally to a 72-month term of imprisonment on the honest services mail fraud count and to concurrent sentences of 60 months on the conspiracy to structure and structuring convictions, followed by concurrent three-year terms of supervised release. Judgment was entered on September 20, 2010.

On this appeal from the judgment of conviction, Botti challenges only his conviction on the honest services mail fraud count and only on the basis of the District Court's allegedly erroneous jury instruction.

The mail fraud conspiracy, bribery, and substantive mail fraud counts arose from Botti's alleged provision of corrupt payments and other benefits to public officials in Shelton, Connecticut where he worked as a real estate developer. The bribery count alleged that in June 2006, Botti provided over $5,000 in things of value to "Public Official #1," identified at trial as the Mayor of Shelton, with the intent to influence that official to use his position and authority to assist Botti in obtaining approval from Shelton's Planning and Zoning Commission for a commercial development project at 828

-5-

Bridgeport Avenue in Shelton ("the 828 Project").  The mail fraud count alleged: (i) a scheme to obtain money and property and (ii) a scheme to deprive the citizens of Shelton of the intangible right of honest services of their public officials. The alleged fraudulent scheme to obtain money and property relied on allegations that Botti obtained approval for $6.5 million in financing for the 828 Project from a financial institution, later shown to be NewAlliance Bank.  That financing depended on approval of the 828 Project by the Planning and Zoning Commission, which Botti allegedly had obtained fraudulently by, among other means, directing employees and persons affiliated with his business to attend a public hearing before the Commission to speak in favor of Botti's application without disclosing their affiliations with Botti.  In support of the scheme to defraud the citizens of Shelton of the honest services of their public officials, the indictment alleged a scheme beginning in or about 2002 in which Botti provided bribes to the Mayor of Shelton and to other Shelton public officials to secure approval for Botti's commercial development projects.

Before trial, while Skilling v. United States, 130 S. Ct. 2896, was pending before the Supreme Court, Botti moved to dismiss the mail fraud count to the extent that it depended on the deprivation of the intangible right to honest services

under 18 U.S.C. § 1346.  That statute provides: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346. Botti argued that the statute was unconstitutionally vague. In opposition to the motion, the Government argued that Botti "could quite easily understand that his conduct in bribing and rewarding public officials with intent that they use their office to benefit him was prohibited conduct proscribed by section 1346," and that "federal courts had uniformly construed the mail fraud statute to cover the situation where public officials received bribes and kickbacks thereby depriving the citizenry of their 'intangible rights' to good and honest government."  Gov't Resp. to Def.'s Mot. to Dismiss at 5.  The District Court denied Botti's motion.

At trial, the Government's theory of honest services mail fraud was that Botti made corrupt payments and provided other corrupt benefits to Shelton public officials with the intent to influence those officials and thereby secure approval for his real estate development projects.  In its opening statement, the Government explained its theory of the case as follows: "At the end of this trial, you will be asked to decide if James Botti engaged in acts of corruption by bribing public officials with the intent to influence them so that

they would think of James Botti's interest, rather than the public interest."

The Government's honest services mail fraud theory alleged a prolonged effort by Botti to corrupt Shelton public officials.  The Government elicited testimony at trial regarding a history of payments made and benefits given by Botti to Shelton's Mayor with the intent to influence the Mayor in the exercise of his official duties.  This included testimony that: Botti had paid for a Florida vacation for the Mayor and his family; Botti had made payments to cover the costs of repairs on the Mayor's house; Botti had significantly overpaid the Mayor for a Christmas party that Botti held at a restaurant owned by the Mayor; and Botti had provided other services to the Mayor without charge including use of Botti's backhoe, removing furniture from the Mayor's house, storing the Mayor's car in Botti's maintenance garage, as well as hiring the Mayor's brother as a favor to the Mayor.

The Government did not limit its theory of honest services mail fraud to bribery of the Mayor.  The Government also argued that Botti provided corrupt payments and benefits to Shelton Planning and Zoning Commission officials to obtain approval for the 828 Project.  At trial, the Government presented evidence that Botti had submitted plans for the 828 Project to the Shelton Planning and Zoning Commission.  The

Government offered testimony that, after submitting his plans, Botti became aware that he lacked the votes to obtain approval for the 828 Project from the Planning and Zoning Commission, which led him to provide Shelton's Mayor with a $50,000 bribe in exchange for which the Mayor would use his influence with the Planning and Zoning Commission to secure approval for the 828 Project.[1]  There was also evidence that, after receiving $50,000 from Botti, the Mayor had urged members of the Planning and Zoning Commission to approve the 828 Project.

The Government also offered testimony that Botti had provided benefits directly to members of the Planning and Zoning Commission who had voted in favor of the 828 Project. Botti provided $150 gift certificates to two members of the Planning and Zoning Commission who voted in favor of the 828 Project and to another commissioner who provided assistance in obtaining approval of the 828 Project.  Botti also paid about $2000 for a Christmas party at a restaurant owned by one of the members of the Planning and Zoning Commission who voted in favor of the 828 Project.

During its summation, the Government argued that there were two prongs of the mail fraud alleged in the indictment:

---

[1] This incident also served as evidence in support of the bribery count on which the jury ultimately could not reach a verdict.

"The first prong, he intended to deprive the citizens of Shelton of the honest services of their public officials. He also engaged in a mail fraud to deprive NewAlliance Bank of millions of dollars in loan proceeds." The Government summarized for the jury the evidence of the history of bribes that Botti had paid to the Mayor of Shelton and to other Shelton officials in exchange for favorable treatment. Based on this pattern of behavior, the Government argued, "James Botti thinks this is how you do business in Shelton; you grease the wheel. . . . James Botti thinks you have to pay to get things done."

With respect to the mail fraud scheme to obtain money and property from NewAlliance Bank, the Government focused on the misrepresentations that allegedly led the Planning and Zoning Commission to approve the 828 Project and thereby satisfy a condition for financing approval from the bank. The Government argued, "Botti's scheme to defraud was also an effort to make money for himself. He wanted the millions of dollars NewAlliance Bank had waiting for him, if he could just get [Planning and Zoning Commission] approval." As evidence of the materially false representations connected with this mail fraud allegation, the Government pointed to testimony that Botti had sent Greg Fracassini and Dan Witkins to testify in favor of the 828 Project before the Planning and Zoning

Commission in June 2006 and instructed them "to lie about their association with him." The Government argued that this testimony was highly influential in securing the Planning and Zoning Commission's approval of the 828 Project, which was a condition precedent to Botti's securing the multi-million dollar financing from NewAlliance Bank.

The Government's proposed instruction on the honest services mail fraud count specified that its sole theory of honest services fraud was bribery. The Government's proposed jury instruction provided:

> A government official who uses his or her public position for self-enrichment breaches the duty of honest service owed to the public and the government. So, for instance, a public official who accepts a bribe or corrupt payment breaches the duty of honest, faithful, and disinterested service. While outwardly appearing to be exercising independent judgment in his or her official work, the public official instead has been paid privately for his or her public conduct. Thus, the public is not receiving the public official's honest and faithful service to which it is entitled.
>
> The Government alleges that defendant JAMES BOTTI engaged in a scheme to defraud the citizens of Shelton, Connecticut of the intangible right to the honest services of its public officials by providing benefits to such officials with intent to influence such officials. Where there is a stream of benefits arranged by the payor to favor a public official, the Government need not demonstrate that any specific benefit was received by the public official in exchange for a specific official act. In other words, when payments are made by a payor to a public official with the intent to retain that official's

services on an "as needed" basis so that when the opportunity presents itself that public official will take specific official action on the payor's behalf, that constitutes a breach of the public official's duty of honest services. Previously, in Request #34, I defined for you the definition of a "bribe" and you may refer to that definition in considering whether defendant JAMES BOTTI engaged in a scheme to defraud the public of its intangible right to the honest services of its public officials.

Request #34, the request relating to the § 666 bribery charge, defined a bribe as "a corrupt payment that a person provides to a public official with the intent to influence the official in the performance of his or her public duties."

At the charge conference, Botti's counsel stated that he was not comfortable with the Government's proposed instruction on honest services fraud because "it seems to be so skewed to the allegations here. . . . It is not, I don't think, a generic definition of theft of honest services. It is a description of theft of honest service as alleged in this case." Botti's attorney ultimately did not object to the instruction, did not offer alternative wording when given the opportunity, and stated that he would defer to the District Court regarding the jury instruction.

The District Court began its charge to the jury by handing out copies of the redacted indictment and reading most of it to the jury. The District Court instructed the jury on

the bribery charge as the Government had requested, and read the relevant statute to the jury. The District Court defined the elements of the offense of bribery as follows:

> First, at the time alleged in the indictment . . . Public Official 1, was an agent of the city of Shelton, Connecticut; second, that the City of Shelton received federal benefits in excess of $10,000 in a one-year period; third, that defendant gave or agreed to give or offered something of value to [Public Official 1]; fourth, that the defendant acted corruptly with the intent to influence or reward [Public Official 1] with respect to a transaction of the City of Shelton; fifth, that the value of the transaction to which the payment related was at least $5,000.

Turning to the honest services mail fraud count, the District Court read the allegations in the indictment and the relevant statutory provisions to the jury. The District Court then explained the elements:

> First, that the defendant devised a scheme or artifice. There are two types of schemes charged in Count Three of the indictment. One is a scheme or artifice for obtaining money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the indictment.
>
> The other is a scheme or artifice to deprive the citizens of Shelton of the intangible right of the honest services of their public officials as alleged in the indictment.
>
> Second element: That the defendant knowingly and willfully participated in the scheme or artifice, with knowledge of its fraudulent nature and with specific intent.

> Third: That in execution of that scheme or artifice, the Defendant used or caused the use of the mails, as specified in the indictment.

The District Court provided a more truncated explanation of honest services than the charge sought by the Government. The District Court instructed the jury as follows:

> A public official or local government employee owes a duty of honest, faithful, and disinterested service to the public and to the government that he or she serves. The public relies on officials of the government to act for the public interest not for their own enrichment. A government official who uses his or her public position for self-enrichment breaches the duty of honest service owed to the public and to the Government.
>
> So, for instance, a public official who accepts a bribe or corrupt payment [breaches] the duty of honest, faithful and disinterested service, while outwardly appearing to be exercising independen[ce] in his or her official work, the public official instead has been paid privately for his or her public conduct. Thus, the public is not receiving the public official's honest and faithful service to which it is entitled.

Defense counsel did not object to the instruction.

The jury returned a guilty verdict on the honest services mail fraud count. The jury was unable to reach a verdict on the mail fraud count based on deprivation of money or property.

After trial, Botti moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and for a new trial pursuant to Federal Rule of Criminal Procedure 33,

-14-

arguing that the evidence of honest services mail fraud was insufficient to support a conviction. In his motion for a judgment of acquittal, Botti argued that none of the testimony relating to bribery of the Mayor of Shelton could be considered in support of his conviction because the jury had not voted to convict Botti of bribery. Botti argued that the remaining evidence of bribes of Planning and Zoning Commission officials was insufficient to support a conviction of honest services fraud.

After the Supreme Court issued its opinion in Skilling, 130 S. Ct. 2896, Botti submitted a supplemental memorandum in support of his motion for a judgment of acquittal, which argued that the jury charge and verdict form left open the possibility that the jury could have convicted Botti of honest services mail fraud on a non-bribery theory in contravention of the Supreme Court's holding in Skilling. Botti claimed that the indictment was defective insofar as it did not "specifically allege that the scheme used to commit honest services fraud was bribery"; instead, it "indicat[ed] a general theory of honest services mail fraud, namely, that defendant contrived a scheme or artifice to defraud by means of fraudulent pretenses or misrepresentations." Botti argued that the Government's proposed instruction—with which defense counsel had expressed discomfort at the charge conference—

-15-

would have complied with Skilling because it specified that the Government's theory of honest services mail fraud was bribery. However, he claimed that the instruction actually given to the jury did not comply with Skilling because it conflated "general self-enrichment" with "actual bribery." Botti argued that the jury charge was defective because it "did not limit self-enrichment to bribery as required by Skilling, but rather referred to bribery as illustrative."

The District Court denied Botti's motions for a judgment of acquittal and for a new trial. The District Court found that there was "ample evidence that Botti extended numerous favors to several Shelton public servants for the purpose of obtaining in return favorable action on his development applications, particularly the 828 Project, in derogation of the Shelton citizenry's right to their public servants' honest services." The District Court rejected Botti's argument that the jury's failure to return a verdict on the bribery charge necessarily meant that the evidence of honest services fraud was insufficient to support a guilty verdict. The District Court first noted that in Yeager v. United States, 557 U.S. 110 (2009), the Supreme Court had instructed courts not to attribute any meaning to the failure to return a verdict. Furthermore, the District Court found that the evidence

-16-

produced at trial was sufficient to support Botti's conviction for honest services mail fraud.

With respect to Botti's objection to the jury charge based on Skilling, the Court determined:

> There is no substance to this argument. Botti nowhere suggests what this alternative, constitutionally impermissible theory of wrongdoing might be. That is not surprising, since there is no evidence in the record of any sort of wrongdoing other than Botti's bribery of public officials. The indictment did not charge any alternative theory. Neither the government nor the defendant argued any other theory at trial. Neither the jury charge nor the verdict form suggests any other theory. There were no facts, evidence or testimony presented at trial that could reasonably support or give rise to an alternative theory. Botti suggests none. To conclude that the jury might have convicted the Defendant on some theory of honest services mail fraud other than the bribery theory suggested in the jury charge would require pure speculation on the Court's part, and an assumption that the jury acted in an unreasonable manner in contriving some grounds for conviction other than the obvious one clearly supported by the record.

Accordingly, the District Court denied the post-trial motions. This appeal followed.

## DISCUSSION

### I.

The first issue is what standard of review applies to Botti's claim of error. Generally, the propriety of jury instructions is a matter of law that is reviewed de novo. United States v. Bahel, 662 F.3d 610, 634 (2d Cir. 2011). "A

jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Id. (quoting United States v. Bok, 156 F.3d 157, 160 (2d Cir. 1998)) (internal quotation marks omitted).

If the defendant objected to an erroneous jury instruction at trial and raises the same claim of error on appeal, a harmless error standard of review applies. See, e.g., United States v. George, 266 F.3d 52, 58 (2d Cir. 2001), vacated in part on other grounds, 386 F.3d 383 (2d Cir. 2004). Under this standard of review, a conviction will be affirmed only "if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." United States v. Mahaffy, 693 F.3d 113, 136 (2d Cir. 2012) (quoting United States v. Kozeny, 667 F.3d 122, 130 (2d Cir. 2011)) (internal quotation marks omitted).

If the defendant did not object to an erroneous jury instruction before the jury retired to consider its verdict, a plain error standard of review applies. See Johnson v. United States, 520 U.S. 461, 465-66 (1997) (citing Fed. R. Crim. P. 30); Bahel, 662 F.3d at 634. Under this standard of review, the Court of Appeals has discretion to reverse only if the instruction contains "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." Johnson, 520 U.S. at 467 (quoting United States v. Olano, 507 U.S. 725, 732 (1993))

-18-

(internal quotation marks omitted and alteration in original). If those three conditions are met, a court may exercise its discretion to correct the error only if the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Id. at 467 (quoting Olano, 507 U.S. at 732) (internal quotation marks omitted).

Botti argues that he objected to the jury instruction, and therefore, a traditional harmless error standard of review should apply. This argument is without merit. Defense counsel's objection to the proposed instruction at the charge conference was not based on the instruction's failure expressly to limit honest services fraud to bribery and kickback schemes. Rather, Botti's counsel objected to the instruction because it was "so skewed to the allegations here," and it was not "a generic description of theft of honest services." In short, Botti objected because the proposed instruction was too focused on bribery as the means for committing honest services fraud, not because it lacked that focus. These circumstances come close to a waiver of any appellate challenge to the instruction for failing to limit honest services mail fraud to bribery. See United States v. Quinones, 511 F.3d 289, 321-23 (2d Cir. 2007) (discussing true waiver). In any event, because Botti did not object at trial

-19-

on the grounds raised in this appeal, harmless error review does not apply.

Nor is modified plain error review warranted here.  See United States v. Viola, 35 F.3d 37, 42 (2d Cir. 1994) (placing the burden on the Government "to show that plain error in light of a supervening decision did not affect substantial rights").  The Supreme Court's decision in Johnson v. United States, 520 U.S. 461, called into question the modified plain error standard of review that this Court established in Viola.  In Johnson, the defendant had been charged with making a false material declaration under oath before a grand jury in violation of 18 U.S.C. § 1623.  520 U.S. at 463.  The District Court instructed the jury that materiality was a question for the judge to decide, and the defense did not object.  Id. at 464.  The trial judge ultimately found that the statements were material, and the jury returned a verdict of guilty.  Id. After Johnson's conviction, but before her appeal to the Court of Appeals, the Supreme Court decided United States v. Gaudin, 515 U.S. 506 (1995), which established that a jury must decide materiality.  Johnson, 520 U.S. at 464.  When Johnson's case reached the Supreme Court, the Court applied plain error review without mentioning modified plain error review.  Id. at 466-67.  The Court found that the failure to instruct the jury that materiality was an element of the offense was error and

-20-

that it was plain.  Id. at 467-68.  The Court did not decide the third element—whether the forfeited error affected substantial rights—because the Court determined that the satisfaction of the first three factors only gave the Court discretion to correct the error if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  Id. at 468-70.  The Court never placed the burden of proof on the Government.  See id. at 470. Indeed, the Court cautioned against any unwarranted expansion of or creation of any exceptions to the plain error rule in Rule 52(b) of the Federal Rules of Criminal Procedure.  Id. at 466.  In the final step of its analysis, the Court evaluated whether the defendant had presented a plausible argument that the error in the charge had affected the fairness, integrity, or public reputation of the proceedings.  The Court concluded that the error did not seriously affect "the fairness, integrity or public reputation of judicial proceedings" and affirmed the judgment of the Court of Appeals sustaining the conviction.  Id. at 470.

Without deciding whether Johnson overruled Viola, this Court has frequently declined to reach the question of whether the modified plain error standard of review continues to apply when there has been a supervening change in the law after a

-21-

conviction.[2]  See, e. g., United States v. Nouri, No. 09-3627-CR, 2013 WL 780918, at *6 n.2 (2d Cir. Mar. 4, 2013); Bahel, 662 F.3d at 634; Henry, 325 F.3d 93, 100 n.4 (2d Cir. 2003); United States v. Outen, 286 F.3d 622, 639 n.18 (2d Cir. 2002).[3]  In this case, it is also unnecessary to decide whether the modified plain error standard of review survived Johnson because the rationale animating the modified plain error standard of review—that the defendant should not have to show prejudice from an error when the defendant did not contribute to the error and had no basis to object to the error—does not apply.  See Viola, 35 F.3d at 42-43.  In Viola, this Court explained that the purpose of the modified plain error standard of review was to avoid insisting on "an omniscience on the part of defendants about the course of the

---

[2] In Mahaffy, 693 F.3d 113, this Court applied modified plain error analysis. Id. at 136. However, in Mahaffy, the defendant had objected at trial on the grounds raised in his appeal. Id. at 122. Therefore, it would not have been unfair to place the burden on the Government to show that the error had not prejudiced the defendant.

[3] Under similar circumstances, other Courts of Appeals apply the traditional plain error standard of review. See, e.g., United States v. Pelisamen, 641 F.3d 399, 404 (9th Cir. 2011) (applying a plain error standard of review in a case where "there were no legal grounds for challenging the instructions at the time they were given, but such legal grounds ha[d] since arisen due to a new rule of law arising between the time of conviction and the time of appeal"); see also id. at 404-05 (collecting cases and explaining that no Court of Appeals other than the Court of Appeals for the Second Circuit has adopted the modified plain error standard of review).

law that we do not have as judges."  35 F.3d at 42.  At Botti's trial, the Government sought an instruction that plainly would have established bribery as the only basis for the honest services mail fraud charge alleged in this case. Botti's counsel resisted that instruction because it was "so skewed" to the allegations against Botti.  Modified plain error review should not apply when it is the defendant's discomfort with the proposed jury instruction that contributed to the error about which the defendant now complains. Accordingly, in this case, the instruction will be reviewed under the traditional plain error standard.

## II.

Under a plain error standard of review, if this Court finds that the jury instruction (i) was error; (ii) that the error was plain; and (iii) that the error affected substantial rights, then this Court (iv) has discretion to correct the error, "but [it] is not required to do so."  See Olano, 507 U.S. at 735; see also Fed. R. Crim. P. 52(b).  It is well established that "the discretion conferred by Rule 52(b) should be employed in those circumstances in which a miscarriage of justice would otherwise result."  Olano, 507 U.S. at 736 (quoting United States v. Young, 470 U.S. 1, 15 (1985)) (internal quotation marks omitted).  Accordingly, if the first three conditions are met, this Court should exercise

its discretion to correct the error only if it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Johnson, 520 U.S. at 470 (alteration in original and citation omitted).

**A.**

In this case, the failure of the jury instruction to specify that the Government was required to prove honest services mail fraud by a bribery or kickback scheme was plain error, satisfying the first two Olano factors. Error is deviation from a legal rule, unless the rule has been waived by "intentional relinquishment or abandonment of a known right." Olano, 507 U.S. at 732-33 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Error is plain if it is clear or obvious. Olano, 507 U.S. at 734. "Whether an error is 'plain' is determined by reference to the law as of the time of appeal." United States v. Garcia, 587 F.3d 509, 520 (2d Cir. 2009) (quoting United States v. Gamez, 577 F.3d 394, 400 (2d Cir. 2009) (per curiam)) (quotation marks omitted); see also Henderson v. United States, 133 S. Ct. 1121, 1130-31 (2013) (holding that regardless of whether a legal question was settled or unsettled at the time of trial, a court of appeals is bound to apply the law as it exists at the time of appeal).

The Supreme Court held in Skilling that the honest services fraud encompassed by 18 U.S.C. § 1346 must be limited to schemes involving bribes or kickbacks in order to avoid due process concerns.  See 130 S. Ct. at 2931.  Botti correctly argues that the District Court's jury instruction on honest services mail fraud failed to anticipate and, therefore, to satisfy this requirement because it employed language broad enough to encompass a non-bribery theory, which the Supreme Court found unconstitutional in Skilling.  This Court has held that, after Skilling, it is error for a district court to fail to limit honest services fraud to bribery or kickback schemes in the jury instructions.  See, e.g., United States v. Bruno, 661 F.3d 733, 740 (2d Cir. 2011).  Because the District Court's instruction did not specify that only bribes or kickbacks could support an honest services mail fraud conviction, it was plainly erroneous.

**B.**

In this case, however, Botti has failed to establish that the plain error in the charge affected his substantial rights. When evaluating the effect of an allegedly erroneous jury instruction, the jury charge must be read as a whole.  See generally United States v. Allah, 130 F.3d 33, 42 (2d Cir. 1997) (collecting cases).  This Court has reversed in cases tried before Skilling and decided on appeal after Skilling

-25-

where the Government argued a non-bribery or -kickback scheme theory of honest services mail fraud, or where the Government intertwined an alternative theory with a bribery or kickback scheme theory. See, e.g., Mahaffy, 693 F.3d at 136; Bruno, 661 F.3d at 739-40; see also United States v. Hornsby, 666 F.3d 296, 306-07 (4th Cir. 2012); United States v. Wright, 665 F.3d 560, 570-72 (3d Cir. 2012); United States v. Riley, 621 F.3d 312, 321-24 (3d Cir. 2010). In contrast, in cases tried before Skilling and decided on appeal after Skilling where the jury instruction did not specify that a guilty verdict could be returned only if the jury found that the defendant engaged in a bribery or kickback scheme, but the evidence would support only a bribery or kickback scheme theory, this Court has affirmed. See, e.g., Nouri, 2013 WL 780918, at *5-*8; see also United States v. Andrews, 681 F.3d 509, 521 (3d Cir. 2012); United States v. Spellissy, 438 F. App'x 780, 783-84 (11th Cir. 2011) (affirming the denial of a petition for a writ of error coram nobis); see generally Andrews, 681 F.3d at 521-28 (collecting cases). This is such a case.

Botti is correct that, after Skilling, a jury instruction must require the jury to find that the defendant participated in honest services mail fraud by way of a bribery or kickback scheme. However, it does not follow that reversal is necessary in every case in which the District Court erred by

-26-

failing to give that instruction. Viewing the erroneous jury instruction in this case in light of the charge as a whole and in the context of proceedings in which deprivation of honest services by bribery was the only theory that the evidence would support and the only theory that the Government argued at trial, the District Court's failure to limit honest services mail fraud to a bribery or kickback scheme did not affect Botti's substantial rights.

**i.**

Bribery is the only theory of honest services fraud that the Government presented in the indictment or argued at trial, and the District Court's instructions on the mail fraud charge reflected that. The District Court began its instructions by reading most of the indictment to the jury. The indictment detailed extensive allegations of Botti's providing public officials with money and other benefits in order to secure approval for certain development projects. The District Court instructed the jury on the bribery count, during which it defined a bribe as "a corrupt payment that a person provides to a public official with the intent to influence the official in the performance of his or her public duties." The District Court then directed the jury to Count Three of the indictment, the mail fraud charge, read the allegations and the relevant statutory provisions, and explained the elements of the

-27-

offense. Although the District Court did not explain that bribery is the only theory that can support a conviction of honest services mail fraud, bribery is the only example it provided of how the Government could prove the honest services deprivation prong of mail fraud. This is not a case where the charge was interwoven with an alternative theory of how the public could have been deprived of the honest services of its officials such as by a conflict of interest theory, see, e.g., Bruno, 661 F.3d at 739-40.

Botti argues that "[t]he District Court's instruction allowed the payment of a bribe to be but one of many paths rather than the only path" to conviction of honest services mail fraud. He suggests several potential alternative theories that could have supported his conviction. These theories are divorced from the context of the trial and cannot plausibly explain the jury's guilty verdict.

Botti argues that the definition of "scheme or artifice" that the District Court provided allowed the jury to convict him of honest services mail fraud based simply on a finding of fraud, deception, or misrepresentation. The District Court defined "scheme or artifice" as "a plan for the accomplishment of an object," and "a scheme to defraud" as,

> [A]ny plan . . . or course of action to obtain money
> or property or the intangible right of honest
> services by means of materially false or fraudulent

-28-

pretenses, representations, and promises reasonably calculated to deceive persons of average prudence . . . a plan to deprive another of money or property or of the intangible right to honest services by trick, deceit, deception, or swindle.

The District Court provided these definitions within the larger explanation that the scheme or artifice element of honest services mail fraud required "a scheme or artifice to deprive the citizens of Shelton of the intangible right of the honest services of the officials as alleged in the indictment."

In context, the jury could not have understood this definition as anything more than a basic definition of a scheme or artifice to defraud. The jury could not have understood the definition as providing an independent theory of honest services fraud. Mail fraud requires both a scheme or artifice to defraud and an object of that fraud. Pasquantino v. United States, 544 U.S. 349, 355 (2005). At trial, the Government presented two theories of mail fraud, each with distinct objects: (i) a scheme to obtain money fraudulently from NewAlliance Bank, and (ii) a scheme to deprive the citizens of Shelton of the honest services of their public officials by bribery. The victim of the scheme to obtain money fraudulently was NewAlliance Bank, whereas the victims of the honest services fraud scheme were the citizens of Shelton. The District Court made this clear when, at

several points in the charge it clarified that, with respect to the honest services charge, it was the public, or the "citizens of Shelton," who were the victims of the scheme or artifice to defraud, and the District Court specified that the trick or swindle involved in a bribe was that the bribee, "while outwardly appearing to be exercising independen[ce] in his or her official work . . . instead has been paid privately for his or her public conduct." Because the jury charge cannot be read as endorsing, or even suggesting, a theory of honest services mail fraud that is predicated on a freestanding or amorphous swindle or trick, this theory cannot explain the jury's verdict.

Botti also argues that the jury could have convicted him of honest services mail fraud based on the failure to disclose the business relationship he had with Fracassini and Witkins who testified on Botti's behalf before the Planning and Zoning Commission. Therefore, Botti argues that the jury instruction permitted the jury to convict him based on his deception of the Planning and Zoning Commission. However, the Government did not suggest to the jury that sending employees to a public meeting to advocate for Botti's interests without disclosing that they worked for Botti constituted honest services mail fraud. The deception of the Planning and Zoning Commission was used as an instance of the misrepresentations that Botti

had used to obtain approval for the 828 Project from the Planning and Zoning Commission and, as a result, financing from NewAlliance Bank.

Moreover, the jury could not have convicted Botti of honest services mail fraud on the basis of the deception of the Planning and Zoning Commission consistent with the District Court's instructions. The honest services fraud instruction was based upon the premise that "[a] public official or local government employee owes a duty of honest, faithful, and disinterested service to the public and to the government that he or she serves." Thus, the District Court clarified, the public may be deprived of that right when an official "uses his or her public position for self-enrichment" by, for example, taking a bribe, because the official is no longer "exercising independen[ce] in his or her official work," and the public is not receiving the public official's "honest and faithful service to which it is entitled." This definition of honest services mail fraud requires that a public official be working dishonestly, unfaithfully, or interestedly. A public official who has been deceived could not reasonably fall within such a definition.

Botti also suggests that the jury could have relied on evidence of self-enrichment without bribery to satisfy the honest services prong of mail fraud. However, the District

-31-

Court's use of the term "self-enrichment" in the jury instruction plainly encompassed bribery. There is no reasonable view of the evidence that would support a finding that the public officials enriched themselves other than through the receipt of bribes. In this case, the Government did not offer any alternative theory of self-enrichment, such as through a conflict of interest scheme. See, e.g., Bruno, 661 F.3d at 740.

In two footnotes in his briefs to this Court, Botti suggests that the jury could have convicted him of honest services mail fraud based on his provision to Shelton public officials of "gifts and benefits" that did not constitute bribes. This cursory argument is not a basis for reversal. "It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. This rule has particular force where an appellant makes an argument only in a footnote." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 107 (2d Cir. 2012) (quoting Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d Cir. 2001)) (quotation marks omitted).

Moreover, a gifts or benefits theory of honest services mail fraud is inconsistent with the trial record. The indictment charged and the trial record supported that the

gifts Botti gave to the Shelton public officials were in exchange for favorable actions that they took for him.  With respect to the Mayor, the indictment charged and the evidence supported that Botti provided benefits to the Mayor of Shelton from about 2002 to 2006 and that he "expected that the benefits he provided to [the Mayor of Shelton] would result in favorable treatment for Botti and his construction projects." Such a pattern of behavior is sufficient to establish bribery:

> [I]n order to establish the quid pro quo essential to proving bribery, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions). Rather, bribery can be accomplished through an ongoing course of conduct, so long as evidence shows that the favors and gifts flowing to a public official [are] in exchange for a pattern of official actions favorable to the donor.

Bahel, 662 F.3d at 635 (internal quotations marks and citations omitted).

The Government also contended and the evidence supported that the benefits that Botti gave to the members of the Planning and Zoning Commission were made in exchange for their support for the 828 Project.  The gifts to the members of the Planning and Zoning Commission were charged in the portion of the redacted indictment under the heading, "Botti Provides Things of Value to Public Officials For Their Assistance." The Government's Request to Charge explained its theory of honest services fraud as alleging the following:

[Botti] engaged in a scheme to defraud the citizens of Shelton, Connecticut of the intangible right to the honest services of its public officials by providing benefits to such officials with intent to influence such officials. Where there is a stream of benefits arranged by the payor to favor a public official, the Government need not demonstrate that any specific benefit was received by the public official in exchange for a specific official act.

It was unnecessary for the District Court "to use the magic words 'corrupt intent' or 'quid pro quo' to effectively charge a jury on bribery." See Bahel, 662 F.3d at 635.

Botti's alternative theories are contrary to the only theory of honest services mail fraud that the Government actually presented to the jury and that the Government asked the Court to explain as its theory. Accordingly, these alternative theories do not demonstrate that Botti's conviction was based on a non-bribery theory of honest services mail fraud.[4]

---

[4] Botti also argues that the jury's failure to return a guilty verdict on the bribery charge demonstrates that it could not have convicted him of honest services mail fraud on a bribery theory. This argument is without merit.

The Supreme Court has instructed lower courts not to attempt to divine the meaning of a hung count when analyzing a unanimous verdict on another count. See Yeager, 557 U.S. at 121-22. Botti attempts to distinguish Yeager on the basis that it involved a hung jury and an acquittal, whereas this case involves a hung jury and a conviction. However, the reasoning in Yeager was not as limited as Botti suggests. Id. at 120-22. The Court explained that "conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return." Id. at 122.

**ii.**

Finally, assuming that we had discretion to reverse the conviction, we would not exercise that discretion in this case because the error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." Johnson, 520 U.S. at 470 (alteration omitted). The Government sought a proper instruction that would have obviated the error in the jury charge and the defense demurred because that charge hewed too closely to the actual proof in the case. The evidence of the bribe-based honest services mail fraud was overwhelming and there was no other plausible theory presented to the jury. On this record, it cannot be said that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

---

Botti asks this Court to intuit the jury's logic in returning a conviction on the honest services mail fraud charge by analyzing the bribery charge on which the jury was unable to reach a verdict. Yeager forecloses this approach. See, e.g., Hornsby, 666 F.3d at 305 n.4 (rejecting the argument that if "bribes were the dominant theory used to convict [the defendant], then the jury would have found him guilty of the counts that deal directly with facts supporting [the defendant]'s receipt of money").

Moreover, this would be a particularly inappropriate case to find an exception to Yeager. The honest services mail fraud charge of which Botti was convicted charged a scheme from in or about 2002 to defraud the citizens of Shelton of the honest services of the Mayor of Shelton and of other Shelton public officials. Unlike the bribery count, it was not limited to a single instance of providing money to the Mayor of Shelton in or about June 2006.

**CONCLUSION**

We have considered all of the arguments of the parties. To the extent not specifically addressed above, they are either moot or without merit.  For the reasons explained above, we **AFFIRM** the judgment of the District Court.