16-1618-cr (L)
United States v. Skelos

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of September, two thousand seventeen.

PRESENT: RALPH K. WINTER,
REENA RAGGI,
            *Circuit Judges*,
ALVIN K. HELLERSTEIN,
            *District Judge*.[*]

------------------------------------------------------------------------

UNITED STATES OF AMERICA,

                                            *Appellee*,

            v.                                            Nos. 16-1618-cr
                                                               16-1697-cr

DEAN SKELOS, ADAM SKELOS,

                                            *Defendants-Appellants*.

------------------------------------------------------------------------

APPEARING FOR APPELLANTS:    ALEXANDRA A.E. SHAPIRO (Daniel J. O'Neill, Fabien Thayamballi, *on the brief*), Shapiro Arato LLP, New York, New York, *for* Dean Skelos.

                             ROBERT ALAN CULP, Law Office of Robert A. Culp, Garrison, New York, *for* Adam Skelos.

---

[*] Judge Alvin K. Hellerstein, of the United States District Court for the Southern District of New York, sitting by designation.

APPEARING FOR APPELLEE:     THOMAS MCKAY, Assistant United States Attorney (Tatiana Martins, Margaret Garnett, Assistant United States Attorneys, *on the brief*), *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, New York.

Appeal from judgments of the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the criminal judgments entered on May 16, 2016, are VACATED, and the case is REMANDED for further proceedings.

Defendants Dean Skelos, the former Majority Leader of the New York State Senate, and his son, Adam Skelos, stand convicted, following a four-week jury trial, of Hobbs Act conspiracy, *see* 18 U.S.C. § 1951; Hobbs Act extortion, *see id.*; honest services wire fraud conspiracy, *see id.* §§ 1343, 1349; and federal program bribery, *see id.* § 666. On appeal, defendants challenge (1) the jury instructions, (2) the sufficiency of the evidence, (3) the admission of two witnesses' testimony, and (4) the Title III wiretap pursuant to which certain recorded evidence was obtained. We identify charging error in light of *McDonnell v. United States*, 136 S. Ct. 2355 (2016), which was decided after this case was tried. Because we cannot conclude that the charging error was harmless beyond a reasonable doubt, we are obliged to vacate the convictions. *See United States v. Silver*, 864 F.3d 102, 119 (2d Cir. 2017). We vacate rather than reverse because defendants' other challenges, with the exception of one pertaining to witness Senator Tony Avella, are meritless, and therefore, the case can be retried. We assume the parties' familiarity

2

with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to vacate and remand.

1.  "Official Act" Jury Instruction

Defendants assert error in the district court's jury charge as to the "official act" element of the crimes of conviction. We are satisfied that defendants adequately preserved this challenge in the district court even though they did not propose specific alternative language. *See Warren v. Pataki*, 823 F.3d 125, 138–39 (2d Cir. 2016). Accordingly, our review is *de novo*. *See United States v. Botti*, 711 F.3d 299, 307 (2d Cir. 2013).

a.  Instructional Error

"A jury instruction is erroneous if it misleads the jury as to . . . the correct legal standard or does not adequately inform the . . . jury on the law." *Id.* at 307–08 (internal quotation marks omitted). The challenged instruction here stated as follows:

> I have used the term "official act" in describing the crimes charged in Counts One through Eight. The term "official act" includes any act taken under color of official authority. These decisions or actions do not need to be specifically described in any law, rule, or job description, but may also include acts customarily performed by a public official with a particular position. In addition, official action can include actions taken in furtherance of longer-term goals, and an official action is no less official because it is one in a series of steps to exercise influence or achieve an end.

J.A. 619:2798. The Supreme Court has recently held such language deficient. *See McDonnell v. United States*, 136 S. Ct. at 2373–74. Indeed, it has held that charging "official act" to include "acts that a public official customarily performs" raises "significant constitutional concerns" because it could cover "nearly anything a public

3

official does" on behalf of constituents, including arranging and attending meetings, expressing support for policies, and speaking with other officials. *Id.* at 2372.[1] Thus, we are obliged to identify error. *See United States v. Silver*, 864 F.3d at 113.

No different conclusion is warranted by viewing the defective instruction in context. The additional instructions to which the government points—including those relating to Hobbs Act extortion and federal program bribery—do not mitigate the breadth of the official act instruction. Rather, even in context, that instruction invites conviction on acts outside Dean Skelos's official duties as defined by *McDonnell*. *See McDonnell v. United States*, 136 S. Ct. at 2368, 2372 (holding that "official act" must be "a 'question, matter, cause, suit, proceeding or controversy'" requiring "a formal exercise of governmental power," "that is 'pending' or 'may by law be brought' before a public official," who, in turn, "must make a decision or take an action . . . or agree to do so" (quoting 18 U.S.C. § 201(a)(3))).

---

[1] In addressing the constitutional concerns, Chief Justice Roberts explained,

> [C]onscientious public officials arrange meetings for constituents, contact other officials on their behalf, and include them in events all the time. The basic compact underlying representative government *assumes* that public officials will hear from their constituents and act appropriately on their concerns—whether it is the union official worried about a plant closing or the homeowners who wonder why it took five days to restore power to their neighborhood after a storm. The Government's position could cast a pall of potential prosecution over these relationships if the union had given a campaign contribution in the past or the homeowners invited the official to join them on their annual outing to the ballgame. Officials might wonder whether they could respond to even the most commonplace requests for assistance, and citizens with legitimate concerns might shrink from participating in democratic discourse.

*McDonnell v. United States*, 136 S. Ct. at 2372 (emphasis in original).

4

b. <u>Harmlessness</u>

Even where we detect charging error, we will not disturb a conviction "if it is clear beyond a reasonable doubt that a rational jury would have found the defendant[s] guilty absent the error." *United States v. Botti*, 711 F.3d at 308 (internal quotation marks omitted). That is not this case. Rather, here, as in *Silver*, although "the Government presented evidence of acts that remain 'official' under *McDonnell*, the jury may have convicted [defendants] for conduct that is not unlawful, and a properly instructed jury might have reached a different conclusion." *United States v. Silver*, 864 F.3d at 119. Evidence of meetings raised particular concern. *Silver* observed that, even if evidence of the defendant's attendance at a meeting presented the jury with "circumstantial evidence" of a "*quid pro quo* for legislative votes"—which would fall within *McDonnell*'s definition of "official act"—"the jury could have concluded, easily, but mistakenly, that the meeting itself sufficed to show an official act, and gone no further," particularly as there was no instruction "that a meeting on its own is not official action." *Id.* at 123 & n.114.

The same concern arises here. Although the government principally advanced a theory that Dean Skelos's arrangement for or participation in certain meetings constituted circumstantial evidence of a *quid pro quo* for legislative votes, it also argued in the alternative that the meetings themselves satisfied the official-act requirement. *See, e.g.*, J.A. 566:2477–78 ("So the defense wants you to think that things like setting up meetings or making calls about a few thousand dollars don't really count as official actions. It's just wrong. Flat wrong."); *id.* at 581:2588 ("[M]eetings with lobbyists are always taken

5

in the senator's official capacity."); *id.* 594:2699 ("[I]t was an official action for Senator Skelos to have that meeting set up."). When we consider the defective jury charge together with these arguments and the lack of instruction cautioning the jury that a meeting is *not* official action, we cannot conclude beyond a reasonable doubt "that a rational jury would have found the defendant[s] guilty absent the error." *United States v. Silver*, 864 F.3d at 119 (internal quotation marks omitted) (holding that *McDonnell* charging error was not harmless).

In its supplemental briefing, the government submits that *United States v. Boyland*, 862 F.3d 279 (2d Cir. 2017), compels a different conclusion on defendants' § 666 convictions for federal program bribery. In *Boyland*, however, the § 666 counts were not charged in terms of official acts, *see id.* at 287 (observing that only mention of "official act" in § 666 instruction was "stray reference" in course of describing "illegitimate defense"); hence, its conclusion that *McDonnell* did not apply to the § 666 counts *in that case*, *see id.* at 291. By contrast, the record here shows that the Skelos' jury was charged, at the government's request, on a § 666 theory based on "official acts," the definition of which is cabined by the constitutional concerns identified in *McDonnell*. *See* J.A. 619:2798 (instructing jury that "official act" charge applied to all counts); *see also id.* at 247–48 (government's proposed § 666 jury instruction).

In sum, because we cannot conclude that the instructional error as to "official acts" was harmless beyond a reasonable doubt, we are obliged to vacate defendants' convictions in their entirety and to remand the case for a new trial.

2.     Sufficiency

Defendants seek reversal rather than remand, arguing that the evidence is insufficient to support their convictions. We review sufficiency challenges *de novo*, but we will affirm if, upon review of the evidence in the light most favorable to the government, we conclude that, upon proper instruction, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Silver*, 864 F.3d at 113 (emphasis in original) (internal quotation marks omitted). Having reviewed the trial record in its entirety, we conclude that the evidence was more than sufficient to pass this test. We here discuss defendants' particular sufficiency challenges to the *quid pro quo* and official acts elements of the crimes, but our sufficiency conclusion applies to all other challenges, including that to aiding and abetting.

a.     *Quid Pro Quo*

Every statute under which Dean and Adam Skelos were convicted requires proof of a *quid pro quo* agreement, that is, "a government official's receipt of a benefit in exchange for an act he has performed, or promised to perform, in the exercise of his official authority." *United States v. Ganim*, 510 F.3d 134, 141 (2d Cir. 2007) (Hobbs Act extortion); *see United States v. Nouri*, 711 F.3d 129, 139 (2d Cir. 2013) (honest services fraud); *United States v. Ford*, 435 F.3d 204, 213 (2d Cir. 2006) (§ 666 bribery). Particularly in cases involving public officials, this court has held that,

> [a jury may] infer guilt from evidence of benefits received and subsequent favorable treatment, as well as from behavior indicating consciousness of guilt. Acts constituting the agreement need not be agreed to in advance. A

7

> promise to perform such acts as the opportunities arise is sufficient.  The key inquiry is whether, in light of all the evidence, an intent to give or receive something of value in exchange for an official act has been proved beyond a reasonable doubt.

*United States v. Bruno*, 661 F.3d 733, 744 (2d Cir. 2011) (citations and internal quotation marks omitted); *see United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013) (observing that federal bribery and honest services fraud statutes "criminalize scheme[s] involving payments at regular intervals in exchange for specific official[] acts as the opportunities to commit those acts arise, even if the opportunity to undertake the requested act has not arisen, and even if the payment is not exchanged for a particular act but given with the expectation that the official will exercise particular kinds of influence" (alterations in original) (citations and internal quotation marks omitted)).  Applying these principles here, we conclude that the evidence was sufficient to establish a *quid pro quo* arrangement as to each of the three schemes at issue.

In urging otherwise, defendants maintain that the legislation at issue in the PRI and Glenwood schemes was uncontroversial, and that Dean Skelos's vote was virtually assured.  The argument is defeated by precedent.  As this court has ruled,

> [p]ayments to State legislators may constitute bribes even if the legislator's resulting actions are otherwise 'routine'—such as voting in a certain manner or supporting grants to certain businesses. . . .  Moreover, the corrupt intent that is central to an illegal quid pro quo exchange persists even though the State legislator's acts also benefit constituents other than the defendant.

*United States v. Rosen*, 716 F.3d at 701–02; *see also United States v. Alfisi*, 308 F.3d 144, 151 (2d Cir. 2002) ("[T]here is no lack of sound legislative purpose in defining bribery to include payments in exchange for an act to which the payor is legally entitled.").  Thus,

8

the abundant record evidence that Dean Skelos traded his vote for legislation beneficial to PRI and Glenwood in exchange for benefits to his son—such as a $20,000 payment from Glenwood for no work by Adam Skelos and a no-show job for Adam Skelos at PRI, both at Dean Skelos's request—is sufficient to allow a reasonable jury to infer the existence of a *quid pro quo* arrangement with regard to both these schemes.

The same conclusion applies to the AbTech scheme, where one need only view the so-called "Hostage Email" in the light most favorable to the government to conclude that the evidence is sufficient to allow a reasonable jury to find a *quid pro quo*.[2]

Thus, defendants' sufficiency challenge to the proof of *quid pro quo* fails on the merits.

b.      Official Acts

As to the official act elements of defendants' crimes, although we identify charging error, we nevertheless conclude that the evidence is sufficient to allow a correctly charged jury to find this element proved beyond a reasonable doubt. *See United States v. Silver*, 864 F.3d at 113–15 (reaching similar conclusion). Defendants challenge the sufficiency of the evidence solely as to the official act elements of the AbTech counts.

---

[2] The text of the "Hostage Email," which bears the subject line "Adam" is as follows:

> I'm told he's about 45 days away from producing the legislation and the [request for proposal ("RFP")] to do up to ten million project [*sic*] with you. He's hesitant (and his dad called) to do it with the engineer's [*sic*] making more money than him. If he doesn't get like a 4% commission I think they don't think it's worth pushing through.

J.A. 795.

This challenge lacks merit because the evidence shows far more than Dean Skelos's setting up a meeting for AbTech representatives with the New York Department of Health. For example, the "Hostage Email" refers to Dean Skelos "producing legislation and the RFP to do up to [a] ten million [dollar] project [with AbTech]." J.A. 795. Using one's influence as a high ranking state official to push through county legislation and to bestow a county-issued contract are indisputably formal exercises of governmental power constituting official acts under *McDonnell*. *See McDonnell v. United States*, 136 S. Ct. at 2372 (explaining that "official act" encompasses public official's "decision or action" to "us[e] his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official"). Similarly, evidence of Dean Skelos's efforts to pass state legislation to fund various projects benefitting AbTech also supports a reasonable jury finding of legally cognizable official acts.

Accordingly, we reject defendants' sufficiency challenges as without merit.

3.    Witness Testimony

Defendants argue that it was error for the district court to allow Lisa Reid, the Executive Director of New York's Legislative Ethics Commission, to testify about training Dean Skelos on New York State ethics laws, and Senator Tony Avella to testify as to what he considered "official acts." We review a district court's evidentiary rulings for abuse of discretion, which we will not identify absent an error of law, a clearly erroneous assessment of the evidence, or a ruling that cannot be located within the range

10

of permissible decisions available to the district court.  *See United States v. Cummings*, 858 F.3d 763, 771 (2d Cir. 2017).  Even where an evidentiary ruling exceeds the district court's discretion, we will not disturb the judgment if we "can conclude with fair assurance that the evidence did not substantially influence the jury."  *Id.* (internal quotation marks omitted).

We identify no abuse of discretion in the district court's decision to allow Reid to testify.  Evidence that Dean Skelos was aware of ethics rules was relevant to his intent to defraud, and the court's jury instruction satisfactorily ensured that the jury did not substitute state ethics rules for the legal standards determinative of guilt.

When we review Senator Avella's testimony in light of *McDonnell*'s narrowed definition of "official act," however, we conclude that it was error to admit his testimony that "assist[ing] individuals or companies in getting meetings with state agencies" was part of the "official duties" of a state senator.  J.A. 279:254; *see McDonnell v. United States*, 136 S. Ct. at 2372.  That conclusion is only reinforced by the government's use of Avella's testimony in summation to support its argument that an official act is established "when state legislators call other government officials about issues, when they make public statements, when they set up meetings with agents, when they meet with lobbyists."  J.A. 566:2488; *see id.* 594:2700 (referencing Avella's testimony in rebuttal summation as support for proposition that "official acts run[] the whole gamut" of "all the sorts of things that senators do").  The error was compounded, moreover, by the erroneous jury charge on the meaning of official acts.

Because we have already concluded that the charging error warrants vacatur and remand, we need not here decide if the Avella testimony would, by itself, compel such relief. We have no doubt that the able district judge, in conducting any retrial, will not admit such testimony at odds with *McDonnell.*

4.      Conclusion

Upon independent review of the record, and for the reasons principally set forth in the district court's orders and judgments, we conclude that all of defendants' remaining challenges to their convictions are without merit. Nevertheless, because we identify charging error on the "official act" elements of the crimes and conviction, which we cannot conclude is harmless beyond a reasonable doubt, we VACATE the district court's May 16, 2016 judgments and REMAND the case for further proceedings consistent with this order.

                    FOR THE COURT:
                    CATHERINE O'HAGAN WOLFE, Clerk of Court