**Patrick CRANE and Sewer Rodding Equipment Co., Plaintiffs–Appellants,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, Defendant–Appellee.**

**No. 92–55874.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 6, 1994 *.

Memorandum filed Jan. 10, 1994.

Decided Feb. 28, 1994.

Eugene P. Yale, San Diego, California, for the plaintiffs-appellants.

Carol Boyd and Katherine Tatikian, Neumeyer & Boyd, Los Angeles, California, for the defendant-appellee.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Before: GOODWIN and HALL, Circuit Judges, and TANNER *****, District Judge.

## ORDER

The request for publication is GRANTED. The memorandum disposition filed January 10, 1994, is redesignated as an authored opinion by Judge Goodwin.

GOODWIN, Circuit Judge:

Plaintiffs Patrick Crane and Sewer Rodding Equipment Company ("SRECO") appeal from the summary judgment in favor of defendant Royal Insurance Company of America ("Royal"). We affirm.

### I.

Crane and SRECO bought from Royal liability insurance which was in effect from June 1, 1985 to June 1, 1986 and was subsequently renewed. On September 29, 1985, Crane was involved in an accident while operating a watercraft in the course of his duties for SRECO. This accident led to a damages action in the Los Angeles County Superior Court, *White v. Crane, et al.*, No. WEC104051.

Plaintiffs tendered defense of the action to Royal, which tender was refused in a letter from David P. Gerlach of Royal to Robert Crane of SRECO, dated August 22, 1986. The letter explained that the policy "contains coverage under a Comprehensive General Liability, Broad Form Endorsement," and went on to quote the policy's exclusion for:

> "*bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of: (1) any watercraft owned or operated by or rented or loaned to any *insured*, or (2) any other watercraft operated by any person in the course of his employment by any *insured....*" (Plaintiffs' Exhibit 6)

The letter concluded by stating, "[i]f, (sic) you should provide us with additional facts wherein our policy would provide coverage for you, we will review the additional information and advise you accordingly."

Plaintiffs submitted no further information to Royal, and proceeded to defend the lawsuit on their own. On October 11, 1991—five years after the Gerlach letter, and several months after settling the *White* lawsuit—plaintiffs filed suit against Royal in the Los Angeles Superior Court, *Crane et al. v. Royal Insurance Co.*, Case No. SC012312, claiming breach of contract and breach of the duty of good faith and fair dealing. Royal then removed the case to the U.S. District Court pursuant to 28 U.S.C. 1441(b).

The district court granted Royal's motion for summary judgment and denied plaintiffs' motion to amend the complaint to seek reformation. This timely appeal followed.

### II.

Crane and SRECO allege that the district court erred in not granting leave to amend their complaint to seek the equitable remedy of reformation of the contract. They assert that the insurance policy they purchased from Royal actually did cover accidents such as the one at issue in the *White* case, and argue that they should be allowed to reform the written instrument to correspond to what they allege to be the true intent of the parties at the time of contracting.

In support of their theory about the intent of the parties, plaintiffs make much of Gerlach's statement that the policy "contains coverage under a Comprehensive General Liability, Broad Form Endorsement." Indeed, much of their argument hinges on their interpretation of this single sentence.

This argument may be briefly summarized as follows: (1) In 1986, the Insurance Services Office (ISO)[1] revised the standard Com-

***** The Honorable Jack E. Tanner, Senior Judge of the U.S. District Court for the Western District of Washington, sitting by designation.

1. The ISO is an association funded by a number of insurance companies, whose functions include writing standard insurance policy forms which comply with the legal and administrative requirements of the various states. For a somewhat more detailed description, see *Hartford Fire Ins. v. California*, —— U.S. ——, —— ———, 113 S.Ct. 2891, 2896-97, 125 L.Ed.2d 612 (1993).

prehensive General Liability (CGL) policy, including new exceptions to the watercraft exclusion; (2) If the new language had been part of plaintiffs' policy, plaintiffs would have been covered for the type of liability at issue in the *White* lawsuit; (3) In 1986, after the ISO's revisions, the parties renewed their contract of insurance with no changes; (4) Because the renewal did not specifically disavow the description of CGL policies which was contained in the ISO revisions of 1986, plaintiffs assert, this must be the type of coverage plaintiffs already had at the time of renewal; (5) Because the contract was renewed "as is," the 1986 coverage must have been present in the original 1985 contract, and this must have been the intent of both parties at the time of contracting; (6) Thus, plaintiffs were insured against liability arising from the operation of watercraft at the time of the accident, and Royal had a duty to defend and indemnify them.

Plaintiffs were unable to provide a copy of the policy for the trial court's inspection. Instead, the policy was reconstructed from Royal's "Dailies."[2] Plaintiffs contend that, prior to seeing the reconstructed policy, they were unaware that Royal did not agree that their policy covered watercraft. They thus maintain that the reconstructed policy does not accurately reflect the agreement of the parties, and seek reformation on that basis. As they argue in their brief, "[E]ven if the 1985–1986 policy did not actually contain the COMPREHENSIVE GENERAL LIABILITY BROAD FORM ENDORSEMENT and hence an exception to the watercraft exclusion, the parties obviously intended such coverage. APPELLEE showed this intent through APPELLEE'S representation in the August 1986 letter and the renewal of the policy 'as is' when the renewal policy form included non-owned watercraft liability coverage."

### III.

In reviewing a grant of summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir.1992), *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989). This court does not weigh the evidence or determine the truth of the matter, but determines only whether there is a genuine issue for trial. *Federal Deposit,* 969 F.2d at 747.

Looking once again to plaintiffs' argument, we note: (1) that no premium was paid for underwriting a new risk; (2) nothing in the record suggests that the revisions made by the ISO, although they constitute a new industry-wide standard, have any effect upon existing insurance policies; (3) no evidence suggests that insurers are obligated to conform their policies to the ISO's standards. In the absence of agreement, Royal was not obligated to conform its coverage to new language proposed for future contracts. No evidence suggests that a renewal of the contract with no changes automatically incorporates any changes not specifically agreed to by the parties, including the change discussed in the Fidelity Bulletins. Finally, we do not see how the evidence can reasonably lead to the conclusion drawn by the plaintiffs—namely that forms written by the ISO, a third party, in 1986 can have any bearing on the intent of the contracting parties in 1985.

Indeed, the uncontroverted evidence contained in the record defeats plaintiffs' arguments. The declaration of Carolyn Corby, Branch Manager of Royal's Glendale office as to the contents of the policy and the manner in which it was generated from the forms supplied by the underwriter demonstrate that the policy was not intended to contain the coverage now sought by plaintiffs. Rather than presenting contrary evidence, the plaintiffs merely present their own attorney's strained interpretation of the facts, which has no value as evidence. Fed.

---

**2.** "Dailies" are partial records of insurance policies which, as explained in the deposition of Carolyn Corby, "include portions of the policy unique to each insured and information which enables reconstruction of the policy when a request for that policy is made." Evidently, the use of dailies is customary in the insurance industry.

R.Evid. 602. "When a motion for summary judgment is made and supported ..., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

We are left with, on the one hand, evidence that plaintiffs' policy did contain an express watercraft exclusion and, on the other, an imaginative series of inadmissible inferences that the parties intended to the contrary. Because plaintiffs have provided no evidence to support their position, and because the record does not support plaintiffs' conclusions, the district court correctly granted Royal's motion for summary judgment.

**AFFIRMED.**