15-2351(L)
United States v. Vincent Tabone & Malcom A. Smith

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of October, two thousand sixteen.

PRESENT:  JON O. NEWMAN,
GERARD E. LYNCH,
CHRISTOPHER F. DRONEY
*Circuit Judges*,

------------------------------------------------------------------------

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                          Nos.   15-2351(L)
                                                                   15-2433(Con)

DANIEL J. HALLORAN, JOSEPH J. SAVINO, JOSEPH DESMARET, NORAMIE JASMIN,

*Defendants,*

VINCENT TABONE, MALCOLM A. SMITH,

*Defendants-Appellants*.

------------------------------------------------------------------------

FOR DEFENDANTS-APPELLANTS:        ERIC NELSON, Staten Island, New York, *for* Vincent Tabone.

                                  MARC FERNICH, New York, New York, *for* Malcolm A. Smith.

1

FOR APPELLEE:                                    HAGAN SCOTTEN, (Karl Metzner, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York.

Appeal from July 17, 2015 and July 30, 2015 judgments of the United States District Court for the Southern District of New York (Karas, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants Vincent Tabone and Malcolm A. Smith appeal their convictions and sentences of 42 months' and 84 months' incarceration. Their sentences were imposed following a jury verdict of guilty on: (1) conspiracy—under 18 U.S.C. § 371—to commit bribery, in violation of the Travel Act, and honest services wire fraud; (2) honest services wire fraud and attempt to commit honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, 1349, and 2; (3) Travel Act violations, under 18 U.S.C. §§ 1952(a)(3); (4) Hobbs Act extortion charges against Smith, under 18 U.S.C. § 1951; and (5) witness tampering charges against Tabone, under 18 U.S.C. § 1512. These charges were in connection with allegations that Smith bribed several New York City Republican Party officials—including Tabone—in an attempt to receive the "Wilson-Pakula Certificates"[1] necessary to seek the Republican nomination for Mayor of New York City. Tabone and Smith challenge their convictions. They claim that both the applicable New York bribery laws and the honest services fraud statute are unconstitutionally vague. They also argue that the Travel Act and honest services fraud prosecutions violate principles of federalism. In addition, Tabone challenges the sufficiency of the evidence supporting his honest services fraud and witness-tampering convictions, while Smith challenges the sufficiency of the evidence supporting his Hobbs Act conviction. We assume the parties' familiarity with the underlying facts and procedural history of this case.

1. New York Penal Law §§ 200.45 and 200.50 Vagueness

The Travel Act punishes individuals for using interstate or foreign commerce to further unlawful activity. 18 U.S.C. § 1952(a). "Unlawful activity" includes "bribery . . . in violation of the laws of the State in which committed or of the United States." *Id.* § 1952(b)(2). The defendants' Travel Act charges were premised on use of interstate commerce to commit bribery in violation of New York Penal Law §§ 200.45 and 200.50. Defendants challenge those state laws as unconstitutionally vague.

---

[1] A Wilson-Pakula Certificate permits a Democrat to run for Mayor of New York City as a Republican if at least three of the City's five Republican county committees consent. *See* N.Y. Elec. Law § 6-120(3).

Section 200.45 prohibits "confer[ring], or offer[ing] or agree[ing] to confer, any money or other property upon a public servant or a party officer upon an agreement or understanding that some person will or may be appointed to a public office or designated or nominated as a candidate for public office." N.Y. Penal Law § 200.45. Section 200.50 prohibits "[a] public servant or party officer" from "solicit[ing], accept[ing], or agree[ing] to accept any money or property from another person" based upon such an agreement or understanding. N.Y. Penal Law § 200.50. The term "party officer" is defined as "a person who holds any position or office in a political party, whether by election, appointment, or otherwise." N.Y. Penal Law § 200.40.

This Court previously addressed a virtually identical vagueness challenge made by Daniel J. Halloran, who was convicted as part of the same Wilson-Pakula scheme. We rejected Halloran's challenge, ruling that "§§ 200.45 and 200.50 prohibit the conduct constituting the Wilson-Pakula Scheme under any plausible reading of those statutes." *United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016). We therefore reject the defendants' argument.

2.  Honest Services Fraud Vagueness

The wire fraud statute prohibits use of interstate wires by one who has "devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by false or fraudulent pretense, representations, or promises." 18 U.S.C. § 1343. Section 1346 defines "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services." *Id.* § 1346. The defendants challenge the statute as unconstitutionally vague. We reject that contention.

In *Skilling v. United States*, 561 U.S. 358 (2010), the Supreme Court addressed a vagueness challenge to the honest services fraud statute. In order to "preserve the statute without transgressing constitutional limitations," the Court held that "§ 1346 criminalizes *only* the bribe-and-kickback core" of its arguable statutory reach. *Id.* at 408–09. Given that definition, "[a] criminal defendant who participated in a bribery or kickback scheme . . . cannot tenably complain about prosecution under § 1346 on vagueness grounds." *Id.* at 413. The Wilson-Pakula bribery scheme clearly falls within this definition, and therefore the defendants' vagueness challenge fails. *See Halloran*, 821 F.3d at 337–40 (rejecting a vagueness challenge to § 1346, as applied to this Wilson-Pakula scheme, despite defendant's argument that § 1346 fails to specify the source of the fiduciary duty a defendant must breach).[2]

---

[2] Smith contends that his challenge is distinct from Halloran's because he argues that § 1346 is facially vague, rather than vague as applied. However, where a challenged law does not threaten First Amendment interests, "we generally evaluate a vagueness claim only as applied to the facts of the particular case." *Mannix v. Phillips*, 619 F.3d 187, 197 (2d Cir. 2010). Thus, "one to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.* (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)) (internal quotation marks and alterations

### 3. Federalism

The defendants also contend that their Travel Act and honest services fraud prosecutions violate "principles of federalism." We reject these challenges as well.

When an interpretation of a federal criminal statute "would dramatically intrude upon traditional state criminal jurisdiction," we avoid reading the statute to have such reach unless there is a "clear indication" that it does. *Bond v. United States*, 134 S. Ct. 2077, 2088 (2014) (internal quotation marks and alterations omitted). Even assuming *arguendo* that applying § 1346 to the Wilson-Pakula scheme would somehow intrude upon traditional state criminal jurisdiction, the defendants' challenge fails. In *Skilling*, the Supreme Court stated that it is "plain as a pikestaff that bribes and kickbacks constitute honest-services fraud." 561 U.S. at 412. Thus, there is a clear indication that § 1346 reaches the Wilson-Pakula bribery scheme.

Smith's federalism challenge to his Travel Act prosecution also fails. Smith provides no legal support for the proposition that prosecution under the Travel Act for a *state law* crime violates principles of federalism. He rests his argument on New York's supposed "hands-off policy" towards prosecuting Wilson-Pakula conduct under §§ 200.45 and 200.50. However, even if such a challenge were appropriate, Smith has provided no concrete evidence—beyond mere speculation and supposition—that New York prosecutors have *affirmatively* declined to prosecute Wilson-Pakula schemes. *See Halloran*, 821 F.3d at 335 ("The fact that this may be the first time that a scheme to buy a Wilson-Pakula is charged under §§ 200.45 and 200.50 is of no moment without evidence that prosecutors affirmatively declined to prosecute similar schemes in the past."). We therefore reject his argument.

### 4. Honest Services Fraud Sufficiency of the Evidence

Tabone challenges his honest services fraud conviction, claiming that he did not owe a fiduciary duty to any victim of the alleged fraud. The existence of a fiduciary duty is a question of fact for the jury. *Halloran*, 821 F.3d at 340. In challenging the sufficiency of the evidence to support a conviction, "a defendant bears a heavy burden." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008). "In considering such a challenge, we must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor and deferring to the jury's assessment of witness credibility." *Id.* (citations, alterations, and quotation marks omitted).

The "[e]ssential elements of a fiduciary relation are reliance, de facto control and dominance." *Halloran*, 821 F.3d at 338 (quoting *AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co.*, 896 N.E.2d 61, 68 (N.Y. 2008)) (internal quotation marks omitted).

omitted). In *Halloran*, we rejected Halloran's challenge to the existence of a fiduciary duty because the jury considered evidence that county chairs exercised control over the party committees and understood that they had a duty to act in the best interests of the party. *See id.* at 340. Similarly, we find that there was sufficient evidence to support a finding that Tabone owed a fiduciary duty to the Queens County Republican Party. *Inter alia*, the jury heard testimony that the Queens County Republican Party had "confidence" in Tabone, that the "people in the party relied on him and trusted him," and that "[t]here was a relationship of trust" between Tabone and Chairman of the Queens County Republican Party, Philip Ragusa. Supplemental App'x at 429. Other party officials testified that they understood they had a duty to act in the best interests of the party. Moreover, the jury heard a recording in which Tabone stated: "I'm the Chief Operating Officer of the Party. I run the Queens County Republican Party. Nobody else runs the Party. I run the Party. I am the party." *Id.* at 1033. This evidence was sufficient to support a jury finding that Tabone owed a fiduciary duty to the Queens County Republican Party.

5.  Witness Tampering Sufficiency of the Evidence

18 U.S.C. § 1512(b) prohibits "knowingly . . . corruptly persuad[ing] another person, or attempt[ing] to do so, or engag[ing] in misleading conduct towards another person, with intent . . . to influence, delay, or prevent the testimony of any person in an official proceeding [or to] cause or induce any person to withhold testimony . . . from an official proceeding." Section 1512(c) prohibits "corruptly . . . influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so." We define "corrupt persuasion" as persuasion that is "motivated by an improper purpose." *United States v. Gotti*, 459 F.3d 296, 343 (2d Cir. 2006) (quoting *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996)) (internal quotation marks omitted). Tabone challenges the sufficiency of the evidence supporting his conviction under these statutes for attempting to prevent Philip Ragusa from giving testimony in a deposition that was court-ordered due to Ragusa's failing health.

We reject Tabone's challenge. At trial, Nelly Ragusa—Philip Ragusa's wife—testified that, when Tabone came to her door, "[h]e said Phil shouldn't testify because [Tabone] didn't do anything wrong. Everything was legal what he did." Supplemental App'x at 270. She testified that Tabone then went into Philip Ragusa's bedroom. Joseph Levy testified that, while Tabone was in Philip Ragusa's bedroom, he began "telling [Ragusa] that he did not have to give testimony that day, that there was no court that could compel him to give any testimony." *Id.* at 266. Nelly Ragusa also testified that Tabone had never been to her house or taken any role in Philip Ragusa's care prior to that visit. This evidence was sufficient to support Tabone's conviction under 18 U.S.C. § 1512.

6. <u>Hobbs Act Sufficiency of the Evidence</u>

The Hobbs Act prohibits "in any way or degree obstruct[ing], delay[ing], or affect[ing] commerce . . . by . . . extortion[,] or attempt[ing] or conspir[ing] so to do." 18 U.S.C. § 1951(a). Of relevance here, "extortion" is defined to include "the obtaining of property from another . . . under color of official right." *Id.* § 1951(b)(2). To establish extortion under color of official right, the Government "need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Ocasio v. United States*, 136 S. Ct. 1423, 1428 (2016) (internal quotation marks omitted). "[A] public official is not required to actually make a decision or take an action." *McDonnell v. United States*, 136 S. Ct. 2355, 2370–71 (2016). "[I]t is enough that the official agree to do so." *Id.* at 2371. "The agreement need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain." *Id.*

Smith challenges the sufficiency of the evidence of his Hobbs Act extortion conviction. He primarily argues that facilitating a meeting between New York State Senator David Carlucci and Mark Stern was not an "official act." It is true that merely setting up a meeting—without more—does not qualify as an official act. *See id.* at 2371–72. It can, however, "serve as evidence of an agreement to take an official act." *Id.* at 2371. There was sufficient evidence of Smith's agreement to help allocate state funds for Raj's (an undercover FBI Agent) and Stern's (a cooperating witness) benefit in exchange for the Wilson-Pakula bribe payments. In discussing obtaining funding for road improvements that would benefit the Spring Valley real estate development project, Smith instructed Stern to tell Carlucci that Smith would "work with" him and "show him where in the budget, how to get it, and all that kind of stuff." Supplemental App'x at 1128–29. Smith told Raj that if Carlucci "doesn't get enough," then "we go to the agency" to get funding. *Id.* at 1131. Carlucci testified that Smith asked him multiple times to "take" a meeting with Stern. Later, Smith told Raj and Stern that he had "found another place" from which the funds could be allocated. *Id.* at 970. He concluded that "[w]e'll get it done." *Id.* at 971. These discussions about the Spring Valley funding came shortly before and after discussions about the Wilson-Pakula bribery scheme. The jury could properly conclude that this evidenced an agreement to take official action in exchange for payment of Wilson-Pakula bribes.

7. <u>Hobbs Act Jury Instruction</u>

Alternatively, Smith argues that the Hobbs Act jury instruction was inadequate in light of *McDonnell*, because, like the instruction held erroneous in that case, it failed to define specifically for the jury the contours of an "official act" and did not make clear that merely setting up a meeting is not such an act. *McDonnell*, 136 S. Ct. at 2372. Because Smith failed to object to the charge on this ground when given, or to request a

charge of the sort he now argues would have been appropriate, we review for plain error.[3] Under the plain error standard, "an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Prado*, 815 F.3d 93, 100 (2d Cir. 2016) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)) (internal quotation marks omitted).

Assuming *arguendo* that the charge was plainly insufficient in light of *McDonnell*, we nevertheless conclude that any error did not affect Smith's substantial rights. The prosecution's principal theory throughout the trial was that, in exchange for Raj and Stern's bribes to Tabone and others to secure Smith's Wilson-Pakula certificate, Smith would use his influence to help Raj and Stern obtain state funding for the Spring Valley real estate project. To demonstrate the existence of such an agreement, the Government relied on the meeting that Smith set up between Stern and Carlucci, as well as taped conversations in which Smith promised to help Carlucci find the money in the state budget. *McDonnell* makes clear that while merely setting up a meeting is not in itself an "official act" for purposes of Hobbs Act extortion, doing so "could serve as evidence of an agreement to take an official act." *McDonnell*, 136 S. Ct. at 2371. Thus, given the strength of the evidence supporting the Government's theory that Smith promised to help channel government funds to benefit the bribe-givers—something that Smith concedes would be an "official act"—there is no "reasonable probability that the [asserted] error affected the outcome of the trial." *Prado*, 815 F.3d at 102.

We have considered the Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Smith argues that the jury instruction should instead be subject to modified plain error review because his failure to preserve the issue resulted from an intervening change in law. Modified plain error review is the same as plain error review except that the burden of showing (lack of) prejudice is placed on the government rather than the defendant. *United States v. Botti*, 711 F.3d 299, 308 (2d Cir. 2013). We have questioned the continued viability of the modified plain error standard, *Prado*, 815 F.3d at 102–03, but need not decide its fate today, because the outcome of Smith's case is the same under either the modified or conventional plain error standard of review.